1

2

3            UNITED STATES DISTRICT COURT

4            NORTHERN DISTRICT OF CALIFORNIA

5

6    **DIANE M. CHRISTIAN**,                    Case No.  15-cv-05787-YGR

                    Plaintiff,
7
         v.                                     **ORDER ON CROSS-MOTIONS FOR SUMMARY**
8                                               **JUDGMENT**
     **CAROLYN W. COLVIN**,
9                                               Re: Dkt. Nos. 15, 19
                    Defendant.
10

11          Plaintiff Diane M. Christian filed this action seeking judicial review of Administrative Law

12   Judge ("ALJ") Teresa L. Hoskin's determination that she is not disabled under the Social Security

13   Act (the "Act").  Specifically, plaintiff contends that the ALJ lacked substantial evidence to reject

14   the opinions of (i) examining psychologist Dr. Barncord regarding plaintiff's memory and

15   attention and (ii) treating physician Dr. Cervenka regarding plaintiff's mental limitations.

16   Additionally, plaintiff argues that the ALJ did not provide clear and convincing reasons for finding

17   her statements regarding the intensity of her pain not credible.

18          Now before the Court are cross-motions for summary judgment.  (Dkt. Nos. 15, 19.)

19   Having carefully considered the papers submitted and the administrative record, and for the

20   reasons set forth below, plaintiff's motion for summary judgment is **DENIED** and defendant's

21   cross-motion is **GRANTED**.

22   **I.     PROCEDURAL BACKGROUND**

23          On February 15, 2012, plaintiff filed an application for a period of disability and disability

24   insurance benefits with the Social Security Administration (the "SSA"), claiming that she had

25   been disabled since October 20, 2009.  (Dkt. No. 14, "Administrative Record" or "AR" at 12.)

26   The SSA denied plaintiff's claim initially on July 3, 2012, and upon reconsideration on February

27   13, 2013.  (*Id.*)  Plaintiff filed a timely appeal and requested a hearing with an ALJ on April 1,

28   2013.  (*Id.*)  Plaintiff appeared and testified at a hearing on February 19, 2014.  (*Id.*)  In a decision

1    dated May 14, 2014, the ALJ found that plaintiff was not disabled under the Act. (*Id.* at 29.)

2         On July 11, 2014, plaintiff requested review of the ALJ's decision by the Appeals Council

3    ("AC") (*id.* at 8), and on October 19, 2015, the AC denied plaintiff's request, finding "no reason

4    under our rules to review the [ALJ's] decision" (*id.* at 1–6).[1]  Accordingly, the ALJ's decision

5    became the final decision of the Commissioner of the SSA.  (*Id.* at 1.)  Thereafter, plaintiff

6    initiated the instant action, seeking judicial review.  (Dkt. No. 1.)

7    **II.    LEGAL STANDARD**

8         This Court has jurisdiction under 42 U.S.C. § 405(g).  The Court may reverse the ALJ's

9    decision only if it "contains legal error or is not supported by substantial evidence."  *Orn v.*

10   *Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal citations omitted).  Substantial evidence is

11   "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

12   *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  It is "more than a mere

13   scintilla but less than a preponderance."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir.

14   2005) (citation omitted).  Where the evidence is susceptible to more than one rational conclusion,

15   the Court must uphold the ALJ's decision.  *See Burch*, 400 F.3d at 679.

16        The SSA employs a five-step sequential framework to determine whether a particular

17   claimant is disabled.  At step one, the ALJ must determine whether the claimant is engaged in

18   substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  A person is involved in substantial

19   work activity if she engages in work that involves significant physical or mental activities.  20

20   C.F.R. § 404.1572(a).  Gainful work activity is defined as "work usually done for pay or profit,"

21   regardless of whether the claimant receives a profit.  20 C.F.R. § 404.1572(b).  If the claimant is

22   engaged in substantial gainful activity, she is not disabled under the regulation.  Otherwise, the

23   ALJ proceeds to step two.

24        At step two, the ALJ must determine whether the claimant has an impairment (or

25   combination of impairments) that is severe.  20 C.F.R. § 404.1520(a)(4)(ii).  A "severe"

26

27        [1]  Such decision included an implicit finding that the ALJ did not abuse her discretion,
28   make a legal error, or render a decision unsupported by substantial evidence.  (*Id.* at 1.)

United States District Court
Northern District of California

1   impairment must significantly limit an individual's ability to perform basic work activities. *Id.* §

2   404.1521(a). If the claimant does not have a severe impairment (or combination of impairments)

3   that meets the duration requirement of 20 C.F.R. § 404.1509,[2] she is not disabled pursuant to the

4   regulation. Otherwise, the ALJ proceeds to step three.

5          At step three of the sequential evaluation, the ALJ must determine whether the impairment

6   or combination of impairments "meets or equals" the criteria of an impairment listed in 20 C.F.R.

7   Part 404, Subpart P, Appendix 1. 20 C.F.R §§ 404.1520(a)(4)(iii), 404.1520(d), 404.1526

8   (providing the applicable standard for medical equivalence of impairments). If the claimant's

9   impairment or combination of impairments meets the criteria of a listing and the duration

10  requirement, the claimant is disabled. 20 C.F.R. § 404.1520(d). If the impairment or combination

11  of impairments does not meet the criteria of a listing or does not meet the duration requirement,

12  the ALJ proceeds to step four.

13         Before addressing step four, the ALJ must determine the claimant's Residual Functioning

14  Capacity (the "RFC"). 20 C.F.R. § 404.1520(f). A claimant's RFC consists of her ability to

15  engage in physical and mental work activity on an ongoing basis, in spite of any limitations from

16  impairments. 20 C.F.R. § 404.1545. The ALJ should consider both severe and non-severe

17  impairments in determining the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 404.1545.

18         At step four, the ALJ must determine if the claimant has the RFC to perform past relevant

19  work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant has the RFC to perform past relevant work,

20  she is not disabled under the regulation. If the claimant is unable to do past relevant work or has

21  no past relevant work, the ALJ proceeds to the final step in the sequential evaluation.

22         At step five, the ALJ considers the claimant's RFC, age, education, and work

23  experience in determining whether the claimant can perform any other work besides past relevant

24  work. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g). If the claimant can "make an adjustment to

25  other work," she is not disabled under the regulation. Otherwise, she is found to be disabled.

26  _____

27         [2] The duration requirement specifies that the impairment "must have lasted or must be
    expected to last for a continuous period of at least 12 months" unless it "is expected to result in
28  death." 20 C.F.R. § 404.1509.

3

United States District Court
Northern District of California

**III.   THE ALJ'S DECISION**

The ALJ applied the five-step sequential analysis to determine whether plaintiff was disabled and eligible for disability insurance benefits.  (AR 12.)

**A.   Step One**

At step one, the ALJ credited plaintiff's testimony and found that she had not "engaged in substantial gainful activity since October 20, 2009, the alleged onset date."  (*Id.* at 14.)[3]

**B.   Step Two**

At step two, the ALJ determined that plaintiff suffered from the following severe impairments:  "(i) degenerative changes of the lumbar spine; (ii) obesity; (iii) status post myocardian infarction in May 2011 due to acute coronary disease, resolved with subsequent angioplasty with stent insertion; (iv) uncomplicated diabetes mellitus; and (v) depressive disorder, not otherwise specified."  (*Id.* at 14)  The ALJ found that these impairments "cause more than a minimal limitation of the claimant's ability to perform basic work activities."  (*Id.* at 15.)

**C.   Step Three**

At step three, the ALJ found that plaintiff did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."  (*Id.*)  Specifically, the ALJ found that her mental impairments presented no restriction in her daily living activities (she was able to perform significant daily activities performing all of her own self-care without limitation); only moderate difficulties in her social functioning (she was able to interact socially with family, friends, neighbors, and others); no difficulties with regard to concentration, persistence, or pace;[4] and that she has no documented episodes of decompensation or mental deterioration for an extended duration.  (*Id.* at 16–17.)

---

[3]  In her application, plaintiff alleged that she became disabled on October 20, 2008.  (AR at 176.)  However, plaintiff reported that she worked until October 2009, earning almost $36,000 in 2008 and about $28,700 in 2009.  (*Id.* at 184, 203.)  Thus, the ALJ used the October 20, 2009 onset date, and plaintiff does not contend that such was improper.

[4]  The ALJ did, however, note that due to the presence of chronic pain and side effects from prescribed medications, plaintiff should be limited to "performing no more than the simple and repetitive tasks characteristic of unskilled work."  (*Id.* at 16 n.1.)

United States District Court
Northern District of California

1

**D.    RFC**

2        The ALJ determined plaintiff had an RFC to perform "light work" with the following

3    modifications:  plaintiff can "stand no more than 4 hours total in an 8-hour workday, and can walk

4    no more than 20 minutes without interruption and no more than 2 hours total in an 8-hour

5    workday.  Also, the claimant cannot perform more than occasional climbing but can never crouch,

6    crawl, or kneel.  The claimant must avoid more than occasional exposure to vibration and any

7    exposure to extreme heat, cold, or humidity.  Further, the claimant is limited to performing work

8    [sic] simple repetitive tasks characteristic of unskilled work that involves no more than occasional

9    and routine interaction with coworkers or the public."  (*Id.* at 18.)

10        In so finding, the ALJ rejected plaintiff's testimony that she is unable to work in any

11    capacity as a result of her inability to sit for more than ten to fifteen minutes at a time and that she

12    is unable to perform other jobs because of her carpal tunnel syndrome.  (*Id.* at 19.)  While the ALJ

13    acknowledged that plaintiff's medically determinable impairments "could reasonably be expected

14    to cause the alleged symptoms," the ALJ discredited plaintiff's statements "concerning the

15    intensity, persistence[,] and limiting effects of these symptoms."  (*Id.*)  In discrediting plaintiff's

16    testimony, the ALJ considered the following:  her failure to complain consistently as to the

17    disabling symptoms to her physicians and during the hearing; the presence of acknowledged daily

18    activities at a level strongly contradicting her subjective complaints; plaintiff's acknowledgment

19    that she frequently walks as a means of transportation; the absence of abnormal clinical signs and

20    laboratory findings sufficient to support plaintiff's claims; the presence of several normal clinical

21    findings; the claimant's receipt of only routine and conservative treatments; and the medical

22    opinions of medical experts, her examining physicians, and the state agency medical consultants.

23    (*Id.* at 19–20.)

24        Relevant to this motion, the ALJ also addressed plaintiff's claims that her depression and

25    poor memory would restrict her ability to perform work more than the ALJ's RFC calculation.

26    With regards to this, the ALJ found that plaintiff's condition did not warrant any further

27    limitations.  Specifically, the ALJ considered that plaintiff frequently "denied experiencing any

28    psychiatric complaints and was repeatedly noted to present with a normal psychological and

5

neurological examination." (*Id.* at 21.)

In so finding, the ALJ discussed plaintiff's consultative examination with psychologists Chandler and Martin in June 2012. In such examination, the doctors evaluated plaintiff's examination as "only minimally abnormal and notable only for a reportedly depressed mood and blunted tearful affect." (*Id.* at 22.) Dr. Chandler then assigned plaintiff a Global Assessment of Functioning ("GAF") score of 55, which is indicative of moderate symptoms, and opined that plaintiff "would experience only moderate restriction of her ability to interact with others in the workplace as a result of her adjustment disorder with depressed mood and pain disorder." (*Id.*)

The ALJ also discussed plaintiff's neuropsychological consultative examination with Dr. Barncord in July 2013.[5] Dr. Barncord noted that petitioner's memory deficits were "multifactorial and caused by a combination of her affective disorder, situational stress, poor sleep, and side effects from prescribed medications." (*Id.*) Additionally, Dr. Barncord assigned plaintiff a GAF score of 60, which indicates the presence of "only marginally moderate symptoms and limitations." (*Id.*) The ALJ then found that the "delineated limitation [in the RFC] to simple repetitive tasks of unskilled work would avoid stress that might be encountered with more demanding work tasks," which would be consistent with the psychological medical findings. (*Id.*)

The ALJ also discredited the medical opinions of plaintiff's treating physician, Dr. Cervenka, as purely conclusory with "little or nothing in the way of explanation, rationale, or objective support for the extreme limitations it imposes." (*Id.* at 25.) Specifically, the ALJ found that Dr. Cervenka's opinions were based on a "full acceptance of the claimant's subjective complaints," and that such opinions were "strongly contradicted by the claimant's own statements concerning her functional level and activities of daily living." (*Id.*)

**E.    Step Four**

At step four, the ALJ determined that plaintiff could not perform her past relevant work as a hospital cleaner and as a patient escort. (*Id.* at 26.) Specifically, the ALJ acknowledged that the

---

[5] The ALJ's decision does not reference Dr. Barncord by name, but discusses Dr. Barncord's findings in some detail, with citations to his notes in the record. (*See id.* at 22.)

1    impartial vocational expert testified that such past work required performance at the "medium

2    exertional level or above." (*Id.*)

3        **F.    Step Five**

4            At step five, the ALJ asked the impartial vocational expert to determine whether jobs exist

5    in the "national economy for an individual with the [plaintiff's] age, education, work experience,

6    and residual functioning capacity." (*Id.* at 27.)  The vocational expert testified that, in light of all

7    of those factors, several jobs existed that were available to plaintiff.  The ALJ found that, although

8    portions of the expert's testimony were inconsistent with the information contained in the

9    dictionary of occupational titles, that the expert "provided a reasonable, credible, and persuasive

10   explanation for the discrepancy," and, therefore, accepted the expert's testimony on the

11   availability of jobs for plaintiff.  On such bases, the ALJ found that plaintiff was not disabled as

12   defined in the Act.

**IV.    DISCUSSION**

13

14           Plaintiff argues the ALJ committed the following errors:  (a) the ALJ lacked substantial

15   evidence to reject the opinions of plaintiff's physicians, namely (1) Dr. Barncord and (2) Dr.

16   Cervenka; and (b) the ALJ failed to provide clear and convincing reasons for discrediting part of

17   plaintiff's testimony.  The Court addresses below each of the purported errors raised by plaintiff.

18       **A.    Physician Opinions**

19           In determining whether a claimant is disabled within the meaning of the Act, the ALJ must

20   consider all medical opinion evidence. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)

21   (citing 20 C.F.R. § 404.1527(b)).  Medical opinions are arranged in a hierarchy of three groups,

22   namely opinions from (i) treating physicians, (ii) examining physicians, and (iii) non-examining

23   physicians, with the opinions of treating physicians generally accorded the most weight. *See*

24   *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (noting that there are

25   three types of medical opinions in social security cases); *Turner v. Comm'r of Soc. Sec. Admin.*,

26   613 F.3d 1217, 1222 (9th Cir. 2010) (explaining that opinions of treating physicians are entitled to

27   more weight than opinions of examining physicians).  The rationale for giving greater weight to a

28   treating physician's opinion is that he or she is employed to cure and has a greater opportunity to

United States District Court
Northern District of California

7

1    know and observe the patient as an individual.  *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir.

2    1987) (citations omitted).

3           The applicable regulation ordinarily requires the agency to give a treating physician's

4    opinion "controlling weight" so long as it "is well-supported by medically acceptable clinical and

5    laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the]

6    case record."  20 C.F.R. § 404.1527(c)(2).  The ALJ may reject the uncontroverted (as opposed to

7    contradicted) opinion of a treating physician by providing "clear and convincing" reasons

8    supported by substantial evidence in the record.  *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d

9    1194, 1198 (9th Cir. 2008).  "The ALJ can meet [the clear and convincing reasons] burden by

10   setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating

11   his interpretation thereof, and making findings."  *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir.

12   1988) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

13                                   **1.  Dr. Barncord**

14          Plaintiff argues that Dr. Barncord's opinions regarding her mental impairments were more

15   restrictive than were the ALJ's findings as reflected in her RFC determination.  Specifically,

16   plaintiff takes issue with the ALJ's finding that the claimant may perform work so long as she is

17   limited to "simple repetitive tasks characteristic of unskilled work that involves no more than

18   occasional and routine interaction with coworkers or the public."  (AR at 12.)  According to

19   plaintiff, such finding conflicts with Dr. Barncord's assessments regarding plaintiff's memory and

20   ability to maintain attention and concentration.  Thus, plaintiff argues, the ALJ implicitly rejected

21   Dr. Barncord's opinions without explanation, and on this basis, the Court should find that the

22   ALJ's conclusions were unsupported by substantial evidence.  Defendant, on the other hand,

23   counters that the ALJ did not reject Dr. Barncord's opinions, but rather adopted them.  Therefore,

24   there was no need for the ALJ to explain her rejection of such because no rejection occurred.

25          Plaintiff's arguments do not persuade.  The Court finds instructive the Ninth Circuit's

26   decision in *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008).  There, the plaintiff also

27   argued that the ALJ rejected, without explanation, the medical opinion of one of her doctors.  *Id.*

28   at 1173.  The doctor at issue opined that plaintiff had a "slow pace, both with thinking and her

United States District Court
Northern District of California

actions," that she was "moderately limited" in her ability to "perform at a consistent pace without an unreasonable number and length of rest periods," and "mildly limited" in several other mental functioning areas. *Id.* Such doctor did not assess whether plaintiff "could perform unskilled work on a sustained basis." *Id.* The ALJ, in turn, translated such assessment into a concrete restriction to "simple tasks" in his RFC determination. *Id.* The Ninth Circuit held that this did not constitute a rejection of the doctor's opinion, but rather, was "consistent with restrictions identified in the medical testimony." *Id.* at 1174.

Here, with regards to attention, concentration, and processing speeds, Dr. Barncord found that plaintiff scored in the low average range, and noted that her "[p]rocessing speed was notably slow." (AR at 451.) With regards to memory, Dr. Barncord noted that plaintiff "scored in the extremely low to borderline range on all memory tasks." (*Id.*) In summing up his conclusions, Dr. Barncord opined that plaintiff "was largely able to follow brief, concrete instructions when presented without a delay prior to responding. However, when instructions required multiple steps or a delayed response she was largely unable to comply with the task." (*Id.* at 452.)[6] Such appears to be consistent with the ALJ's RFC determination that plaintiff can perform work so long as she is limited to simple, repetitive tasks as explained above.[7]

Thus, the Court finds that the ALJ's RFC determination is consistent with Dr. Barncord's findings and that the ALJ did not reject Dr. Barncord's opinions. As such, the ALJ had no need to explain her rejection of the same. *See Stubbs-Danielson*, 539 F.3d at 1174. Accordingly, the Court finds plaintiff is not entitled to summary judgment on this basis.

---

[6] Plaintiff also appears to take issue with the ALJ's reliance on the GAF score assigned by Dr. Barncord, claiming that the doctor's specific findings should bear more weight. However, here, the ALJ appears to have used the GAF score to confirm, rather than replace, Dr. Barncord's specific findings, explaining that a GAF score of 60 indicates "marginally moderate symptoms and limitations." (*Id.* at 22.)

[7] Plaintiff also appears to argue that any such error with regards to Dr. Barncord was harmful, as evidenced by the vocational expert's conclusions regarding the type of work available to plaintiff. However, because the Court finds that the ALJ did not commit any error with regard to Dr. Barncord, and plaintiff does not allege that the ALJ erred with respect to her treatment of the vocational expert's testimony, the Court need not address the same.

United States District Court
Northern District of California

### 2. Dr. Cervenka

Dr. Cervenka provided opinions related both to plaintiff's physical limitations as well as to her mental impairments. The ALJ explicitly rejected Dr. Cervenka's opinions regarding plaintiff's physical limitations. Specifically, the ALJ found not credible Dr. Cervenka's opinions that claimant would be limited to sitting no more than two hours total and standing no more than one hour total, that claimant would be precluded from lifting objects weighing ten pounds or more, and that claimant would require unscheduled breaks totaling at least ten minutes out of each hour. (AR 23.) In explaining her rejection of such opinions, the ALJ took issue with the "check-mark-the-box" and "fill-in-the-blank" form utilized by Dr. Cervenka, and the ALJ also discussed the contradictory opinions of several other doctors, which the ALJ found to be more consistent and credible. (*Id.* at 23–24.) On these bases, defendant argues that the ALJ provided sufficient reasons to reject Dr. Cervenka's opinions.

Plaintiff argues that the ALJ erred by not directly addressing Dr. Cervenka's opinions relating to plaintiff's mental impairments. (*Id.*) However, Dr. Cervenka's conclusions about plaintiff's mental impairments were inextricably linked to her conclusions regarding plaintiff's physical pain. For instance, Dr. Cervenka's report included conclusory assessments of plaintiff's mental health and capacities in the context of her ability to maintain attention and concentration, explaining that plaintiff's impairment was due to her "[d]epression and pain and hopelessness." (*Id.* at 442.) Dr. Cervenka further opined that plaintiff's "[p]ain and medicines interfere with concentration." (*Id.* at 443.) The distinction plaintiff attempts to make between Dr. Cervenka's opinions about her physical impairments as opposed to her mental impairments, therefore, does not appear to exist considering Dr. Cervenka's entire opinion.

In light of this, the ALJ did not err in her explicit rejection of Dr. Cervenka's opinions. An ALJ may reject or discount the opinions of a physician, but must provide "specific, legitimate reasons based on substantial evidence in the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming ALJ's rejection of certain opinions where the recommendations were "so extreme as to be implausible," "were not supported by any findings made by any doctor," and were "inconsistent with

1    [petitioner's] level of activity").  Here, the ALJ provided specific, legitimate reasons for

2    discounting the opinions of Dr. Cervenka:  First, the ALJ explained that Dr. Cervenka prepared

3    responses to a "check-mark-the-box" form supplied by plaintiff's representative, the answers to

4    which were supported only by evidence from an MRI performed in 2009 and a "listing of the

5    claimant's subjective complaints."  (AR at 24.)  Although the use of such forms is not per se

6    unpersuasive, the lack of articulated support for Dr. Cervenka's opinions here is marked.[8]  Second,

7    the ALJ found that Dr. Cervenka's opinions were directly contradicted by plaintiff's own

8    statements concerning her "functional level and activities of daily living."  (*Id.* at 25.)  Third, the

9    ALJ discussed the opinions of other medical experts and doctors including Drs. Gaeta, Wood,

10   Chandler, and Martin, and found that such opinions were more supported "by the objective

11   medical evidence present in the record."  (*Id.* at 24–25.)  Such a discussion satisfies the ALJ's

12   burden to provide legitimate reasons for discounting Dr. Cervenka's opinions here, and therefore,

13   the ALJ's decision in this regard does not warrant reversal.

14        **B.    Credibility of Plaintiff's Testimony**

15        Plaintiff further contends the ALJ erred in finding plaintiff's testimony to be not entirely

16   credible.  To assess a claimant's subjective testimony, an ALJ must engage in a two-step inquiry.

17   *Tommasetti*, 533 F.3d at 1039 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996)).

18   First, "the claimant 'must produce objective medical evidence of an underlying impairment' or

19   impairments that could reasonably be expected to produce some degree of symptom."  *Id.*  Second,

20   if the claimant provides the evidence required by step one, and there is no affirmative evidence of

21   malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms

22

23        [8]  Plaintiff relies on *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014) for the proposition

24   that check-box forms are acceptable forms of medical opinions entitled to weight and deference.
     There, the Ninth Circuit found that the ALJ "failed to recognized that the opinions expressed in
25   check-box form . . . were based on significant experience with [claimant] and supported by
     numerous records, and were therefore entitled to weight that an otherwise unsupported and
26   unexplained check-box form would not merit."  *Id.* at 1013.  Here, the check-box form submitted
     by Dr. Cervenka appears to fall in the latter category.  Dr. Cervenka's findings on the check-box
27   form were largely conclusory, and, as the ALJ found, were based primarily on Dr. Cervenka's
     acceptance of plaintiff's subjective complaints.  The Court further notes that plaintiff admitted she
28   had limited interactions with Dr. Cervenka:  At the time of her hearing before the ALJ, she had
     seen Dr. Cervenka only four or five times within a period of about one year.  (AR at 70.)

United States District Court
Northern District of California

"only by offering specific, clear and convincing reasons for doing so." *Id.* (citing *Smolen*, 80 F.3d at 1283–84). "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1014 (citation omitted). An ALJ "may find the claimant's allegations of severity to be not credible," but the ALJ "must specifically make findings which support this conclusion." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). In other words, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284.

"These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell*, 947 F.2d at 345 (internal quotation marks and citation omitted). The ALJ may consider, among others, inconsistencies between a claimant's testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which a claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002). But "[i]f the ALJ's credibility finding is supported by substantial evidence in the record," the reviewing court "may not engage in second-guessing." *Id.* at 959.

Plaintiff complains that the ALJ improperly used evidence of plaintiff's "intermittent activities of daily living as evidence of an ability to perform a range of unskilled 'light' work on a full-time basis." (Dkt. No. 15 at 29 (citing *Garrison*, 759 F.3d at 1016). However, consideration of such testimony is explicitly permitted. *See Thomas*, 278 F.3d at 958–59. Additionally, the ALJ provided numerous other bases for her credibility determination, including plaintiff's failure to complain consistently to her physicians regarding the intensity of her symptoms, petitioner's statements to her physicians regarding her activities, the absence of abnormal clinical and laboratory findings sufficient to support plaintiff's testimony, the presence of essentially normal clinical findings, and several other indicia contradicting plaintiff's subjective complaints discussed above. (AR at 19–20.) As the record contains sufficient inconsistencies with plaintiff's

testimony, the Court may not engage in "second-guessing" and therefore does not disturb the ALJ's finding on this issue.  *Id.*[9]

## V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** plaintiff's motion and **GRANTS** defendant's cross motion for summary judgment.  Defendant must file a proposed form of judgment, approved as to form by plaintiff, by no later than **January 20, 2017**.  The Court **SETS** a compliance hearing for the filing of the same for **Friday, January 27, 2017** at **9:00 a.m.** in the Federal Building, 1301 Clay Street, Oakland, California, Courtroom 1.  If compliance is complete, the Court may vacate the hearing and the parties need not appear.

This Order terminates Docket Numbers 15 and 19.

**IT IS SO ORDERED.**

Dated: January 6, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[9]  Plaintiff also takes issue with the following statement from the ALJ:  "For the reasons outlined above, the undersigned finds that the claimant's statements concerning the intensity, duration, and limiting effect of her symptoms not entirely credible to the extent alleged.  They will therefore only be credited to the degree they are corroborated by the objective medical evidence." (AR at 20.)  According to plaintiff, the ALJ was explicitly precluded from applying the above standards by the regulations, which state that the SSA "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work *solely* because the available objective medical evidence does not substantiate your statements."  20 C.F.R. § 404.1529(c)(2) (emphasis supplied).  However, as the ALJ made clear, her rationale was not based solely on the lack of corroboration.  She identified several reasons not to credit plaintiff's testimony in such regard.